IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA GALLEGOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-0377-O-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on Plaintiff's *Motion for Summary Judgment* (Doc. 15). For the reasons set forth herein, it is recommended that Plaintiff's *Motion for Summary Judgment* be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND[1]

**A.    Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). In May 2009, Plaintiff filed for SSI and DIB, claiming disability since November 2007. (Tr. 11, 127-37, 189). Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). (Tr. 1-2, 8-11, 60-74).

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

B.     **Factual Background**

Plaintiff was born on January 23, 1964, making her 45 years old when she filed for benefits. (Tr. at 17). She completed the 11th grade, and her past relevant work includes waiting tables, working as a certified nurse assistant, and cooking at a senior center. (Tr. at 27-29). Plaintiff was unable to work full time her last year of employment, which ended in November 2007, due to her fatigue, and she was terminated based on concerns about her cooking while she had hepatitis C ("Hep C").[2] (Tr. at 28-30, 41-42).

In 2004, Plaintiff had a liver biopsy, which showed severe deterioration and extensive necrosis, and she learned that she had Stage 4 cirrhosis.[3] (Tr. 40, 289). In January 2007, Dr. Keith Tolman diagnosed Plaintiff with, *inter alia*, Hep C, cirrhosis, fatty liver disease, and thrombocytopenia, with all of her physical illnesses being inadequately controlled.[4] (Tr. at 341). Dr. Tolman started Plaintiff on drug therapy for her liver problems, but after a few months of treatment, she was not responding and was beginning to have adverse side effects. (Tr. at 335-339).

A September 2007 CT scan revealed that Plaintiff's liver was nodular and irregular, consistent with her diagnosis of cirrhosis, and she had hypertrophic changes (general increase in

---

[2] Hepatitis C is caused by a virus that gives rise to chronic persistent infection. A high percentage of cases develop into chronic liver disease, leading to cirrhosis and possible hepatocellular carcinoma. *Stedman's Medical Dictionary* (27th ed. 2000), available on Westlaw.

[3] Cirrhosis is an endstage liver disease characterized by diffuse damage to the cells, associated failure in the function of the cells, and interference with blood flow in the liver, which ultimately results in liver failure. *Id.*

[4] Thrombocytopenia is a condition in which there is an abnormally small number of platelets in the circulating blood. *Id.*

bulk, not due to tumor formation) of the caudate lobe.[5] (Tr. 318). Her spleen was also moderately enlarged, indicative of portal hypertension (a condition causing obstruction to the portal vein). (Tr. 318-19). That same month, treating physician Dr. William Hutson performed an upper GI endoscopy on Plaintiff, which was negative for any problems. (Tr. at 324).

In September 2009, Plaintiff returned to Dr. Hutson's office after it was noted that she had missed several appointments due to a lack of funds following her divorce. (Tr. 330). Dr. Hutson examined Plaintiff after she had an ultrasound of her liver. The ultrasound revealed that Plaintiff's liver was prominent in size, but there was no evidence of masses or splenomegaly (enlargement of the spleen). (Tr. 330). Dr. Hutson's impression was that Plaintiff suffered from chronic Hep C and well-compensated cirrhosis, and he noted that she had "significant fatigue." (Tr. 330). On the same day as her office visit, Dr. Hutson filled out a state workforce services sheet, opining that Plaintiff's Stage 4 cirrhosis and Hep C, which had been diagnosed with a CT scan and blood tests, precluded her from working in any job for at least a year. (Tr. at 294).

In October 2009, Plaintiff underwent a consultative physical exam administered by Dr. Justin Johnsen. (Tr. at 275). Plaintiff reported that her symptoms included abdominal pain, fatigue, headaches, and nausea. (Tr. at 275-76). She complained that any type of physical exertion exacerbated her pain and that she could stand for only 45 minutes, walk for only half a block, she had difficulty carrying objects, and she could only lift 20 pounds. (Tr. at 275). Dr. Johnsen concluded that Plaintiff had "no limitations from her hepatitis C." (Tr. at 278).

In May 2010, Plaintiff underwent an ultrasound of her abdomen, which revealed that her

---

[5] All parenthetical medical terms are defined by reference to *Stedman's Medical Dictionary*.

liver was slightly nodular, and her portal vein was enlarged, but she had no focal hepatic lesions or ascites (accumulation of fluid in the peritoneal cavity). (Tr. 322). Her spleen was more enlarged than it previously had been. (Tr. 320, 322). In June 2011, a CT scan showed that Plaintiff's liver was mildly enlarged with mild nodularity consistent with cirrhosis, and she had a small hypodense lesion. (Tr. 399). Her spleen was more enlarged, and trace perihepatic ascites were present. (Tr. 399). It was noted that Plaintiff was not a candidate for a liver transplant due to her financial situation, nor was she a candidate for treatment of her ascites, which were her only symptom of decompensated cirrhosis. (Tr. 400).

In terms of her mental health, Dr. Tolman initially noted Plaintiff's depression in January 2007 and then again in April and May 2007. (Tr. at 334, 336, 338-39, 341). In September 2009, Dr. Hutson stated that Plaintiff was negative for any psychological symptoms. (Tr. 330). However, in October 2011, Plaintiff complained of depression and was referred to a psychiatrist. (Tr. 417, 419-20). In November 2011, Plaintiff stated that she had no depression and felt well except for some fatigue. (Tr. 431).

Plaintiff's testimony and statements indicate that she can take care of her personal needs, perform most household chores as long as she rests in between, prepare light meals, grocery shop if necessary, drive a car, read, attend church sometimes, visit with family, watch television, lift light weights, and walk for short distances. (Tr. 35-39, 43-44, 196, 199-201, 203). She testified that she could not sit or stand for long periods of time and took three naps a day, totaling about two-and-a-half hours a day. (Tr. 37, 199).

## C.  ALJ's Decision

In November 2011, the ALJ ruled that Plaintiff had the severe impairments of Hep C and

cirrhosis, but those impairments did not meet or equal any of the Listings. (Tr. 13-14). The ALJ did not mention Plaintiff's depression and instead found that she had the residual functional capacity ("RFC") to do light work, in that she could lift and carry 20 pounds occasionally and ten pounds frequently, stand/walk for four hours in an eight-hour workday, sit for six of eight hours, and perform only simple work due to her fatigue. (Tr. 14, 16). The ALJ determined that Plaintiff's allegations about the limiting nature of her symptoms were not credible to the extent they were inconsistent with the RFC finding. (Tr. 15).

In particular, the ALJ noted that while Plaintiff complained of pain, fatigue, and nausea, she reported doing housework, watching television, reading, and tending to her grandchildren, and she had normal muscle strength and was able to lift and carry light objects. (Tr. 15). The ALJ also noted the conflicting stories Plaintiff gave as to why she left her last job (i.e., her fatigue versus the concerns about her handling food). (Tr. 15, 28-30). Additionally, the ALJ found that Plaintiff's condition had improved lately, as she denied pain and nausea, her cirrhosis and Hep C were well-compensated, and she was merely being monitored in a conservative fashion by her doctors. (Tr. 15). Nevertheless, the ALJ did restrict Plaintiff to standing and walking only four hours of the workday due to her subjective complaints of fatigue, finding that those complaints were entitled to some weight. (Tr. 15).

The ALJ gave little weight to Dr. Hutson's opinion that Plaintiff was precluded from working, stating that Plaintiff had admitted at the administrative hearing that Dr. Hutson's restriction was based on Plaintiff's subjective reports of fatigue, and there was a two-year gap in her treatment with Dr. Hutson. (Tr. 16). In reliance on the testimony of a vocational expert, the ALJ concluded that Plaintiff could not perform her past relevant work, but could work in an

unskilled position at the sedentary or light level, in such positions as a bench assembler, cashier II, or information clerk.  (Tr. 16-18).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d

232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENT AND ANALYSIS

**A.     Whether the ALJ's Credibility Assessment was Erroneous**

Plaintiff argues that the ALJ conducted only a cursory analysis of her credibility in regard to the limitations caused by her fatigue, and the ALJ's reliance on Dr. Johnsen's consultative exam was erroneous because Dr. Johnsen did not mention her cirrhosis or resulting limitations. (Doc. 15 at 12-14). Moreover, Plaintiff contends, her ability to perform some activities is significantly limited by her worsening fatigue, which affects her ability to sustain performance of these acts in a full-time employment environment. *Id.* at 14-15. Plaintiff urges that the ALJ wrongly relied on notes in the record that her liver disease is well-compensated because that merely means there is no treatment that can heal her liver, and her condition can only be monitored. *Id.* at 16. Finally, Plaintiff argues that the ALJ erred in failing to consider seven

factors which weigh in favor of finding her credible. *Id.* at 17-19.

Defendant responds that the ALJ properly assessed Plaintiff's credibility, and the record as a whole supported her RFC for a limited range of light work, considering her reported daily activities. (Doc. 16 at 3-5). Defendant also urges that the ALJ implicitly considered the seven factors at issue, and the fact that Plaintiff received only conservative treatment further supports the ALJ's credibility finding. *Id.* at 5. Plaintiff's reply brief largely reiterates her prior arguments. (Doc. 17 at 2-5).

Social Security Ruling 96-7p provides that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

The ALJ must consider seven factors in making her determination on the credibility of the claimant's subjective complaints: (1) the individual's daily activities, (2) the location, duration, frequency, and intensity of the individual's symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medications the individual takes, (5) treatment the individual receives, (6) any measure other than treatment the individual uses to relieve symptoms, and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *5. Nevertheless, "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). To establish prejudice stemming from an error, the claimant must show that he "could and would have adduced evidence that might have altered the

8

result." *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984).

In this case, the ALJ made more than a single conclusory statement that Plaintiff was not fully credible in regard to her level of fatigue. SSR 96-7p, 1996 WL 374186 at *5. In particular, she found conflicts as to the reason Plaintiff left her last job, the large number of activities she engaged in, and the fact that her liver condition had stabilized to the point that she only needed monitoring. (Tr. 15). While Plaintiff undoubtedly disagrees with the ALJ's rationale, it constitutes sufficient evidence to support the ALJ's conclusion, and this Court cannot reweigh the evidence and substitute its own judgment for the ALJ's opinion. *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 236.

Further, the record as a whole reveals that the ALJ adequately considered the seven required factors, one of which is daily activities. *See Baty v. Barnhart*, 512 F.Supp.2d 881, 894 (W.D. Tex. 2007) (upholding the ALJ's decision where the plaintiff contended that the ALJ attached too much weight to her ability to engage in certain daily activities, but the ALJ also had considered the medical evidence, the reason the plaintiff was dismissed from her prior job, the duration and frequency of the plaintiff's panic attacks, precipitating and aggravating factors, medication, testimony and record materials, medical and vocational experts, and physicians' opinions). In particular, the ALJ here noted (1) the extent and frequency of Plaintiff's fatigue and, thus, limited her to standing and walking for only half of the work day (Tr. 15); and (2) that Plaintiff's only treatment consisted of her being monitored. Any error the ALJ made in failing to consider the type, effectiveness, and side effects of Plaintiff's medications was harmless as there is no mention in the record of her taking any medication. *Mays*, 837 F.2d at 1364. To the extent the ALJ did not address any other measure Plaintiff used to relieve her symptoms, such as

9

frequent naps, the ALJ permissibly found that testimony not fully credible as detailed above. (Tr. 15); *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 236.

Finally, while Plaintiff argues that the ALJ wrongly relied on Dr. Johnsen's limited findings in making her credibility assessment, the Court finds no error. (Tr. 15). First, the ALJ noted that Dr. Johnsen found Plaintiff's outward physical exam to be largely unremarkable. (Tr. 15). A review of Dr. Johnsen's findings reveals that he noted only that Plaintiff had some pain on abdominal palpation and exhibited mild hepatosplenomegaly (enlargement of the liver and spleen). (Tr. 278). This is consistent with the observations of Plaintiff's other doctors, who noted no outward signs of her illness, were monitoring her progress through the use of ultrasounds and CT scans, and noted that her liver and spleen were enlarged. (Tr. 318-19, 320, 322, 330, 399). The ALJ also relied on Dr. Johnsen's description of Plaintiff's self-reported claims of pain, which the ALJ juxtaposed with Plaintiff's self-reported daily activities.

**B.       Whether the ALJ Erred in Not Finding Plaintiff's Depression Severe**

Plaintiff next argues that the ALJ erred in not finding her depression to be a severe impairment, and the ALJ should have re-contacted her treating physician to further develop the record as to her mental health problems. (Doc. 15 at 19-21). Defendant urges that Plaintiff's references in the medical record to depression were isolated and inconsistent and largely pre-dated her claimed disability onset date, such that it is clear any such problems did not interfere with her ability to work. (Doc. 16 at 5-7).

Plaintiff's complaints of depression appear in the record approximately seven times. (Tr. 305-08, 310-11, 334, 336, 338-39, 341, 417, 419-20). Of these, six complaints pre-dated Plaintiff's disability onset date by several months and are not particularly relevant for that reason.

10

*Villalpando v. Astrue*, 2008 WL 375267, *3 (W.D. Tex. 2008) (holding that records that pre-dated the claimant's disability onset date were not relevant); *see also Franzen v. Astrue*, 555 F.Supp.2d 720, 735 n.105 (W.D. Tex. 2008) (finding that medical records from three years before the plaintiff protectively filed for benefits were not relevant). Further, there is no evidence in the record to suggest that Plaintiff's depression during that time frame interfered with her ability to work, because she was still working and stated that she left her job because of fatigue or because she was laid off due to concerns about her handling food while she had Hep C, and not because of any problems caused by her depression. (Tr. 28-30, 190). The only other complaint of depression was noted four years later, in October 2011, when Plaintiff went to her doctor for a liver check-up and asked about getting on medication because she felt depressed. (Tr. 419).

     Plaintiff did not list depression as an impairment in her requests for SSI and DIB or make any mention of it during her testimony. (Tr. 24-55, 189). Moreover, there is no indication in the record that she ever requested a consultative mental examination. Further, the October 2011 medical record in which she stated that she was depressed was not presented to the ALJ at all, but only to the Appeals Council. (Tr. 417, 419-20). This isolated complaint made several years after her initial complaints was not enough to raise a suspicion concerning an impairment that would require the Appeals Council or ALJ to re-contact her treating physician to further develop the record as to any mental health problems. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (holding that complaints in the medical record that the claimant had become "emotionally upset" on one occasion and that his inability to work made him "grouchy, angry, and depressed" were not sufficient to prove a mental impairment or to require the ALJ to order a consultative exam to

11

discharge his duty of conducting a full inquiry into the claimant's claims).  Accordingly, the ALJ did not err in failing to find Plaintiff's depression to be a severe impairment or in not contacting Plaintiff's treating physician to further develop the record in that regard..

**C.    Whether the ALJ Erred in Determining Plaintiff's RFC**

Next, Plaintiff argues that the RFC's function-by-function assessment is not complete because it did not address her ability to push and pull, and it also omitted any discussion of her depression.  (Doc. 15 at 21-22).  Defendant responds that the ALJ was not required to discuss all of Plaintiff's abilities on a function-by-function basis, but merely had to explain how the evidence supported her conclusions about Plaintiff's limitations and discuss her ability to perform sustained work activities, which the ALJ did.  (Doc. 16 at 8).

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments.  20 C.F.R. §§ 404.1545, 416.945; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  The RFC assessment must identify the claimant's functional limitations and assess the claimant's work-related abilities on a function-by-function basis.  SSR 96-8P, 1996 WL 374184, *1.  RFC involves both exertional and nonexertional factors.  Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.* at *5.  "Each function must be considered separately." *Id.*

Although Plaintiff is correct that the ALJ did not make a finding regarding her ability to push and pull, she does not identify any evidence of limitations in that regard.  Similarly, for the reasons stated above, with regard to Plaintiff's symptoms of depression, she also cannot show any effect on her ability to work.  (Tr. 28-30).  Accordingly, because Plaintiff has not shown that

she suffered any prejudice stemming from these alleged errors, remand is not warranted. *Kane*, 731 F.2d at 1219-20.

**D.     Whether the ALJ Erred in Failing to Give Dr. Hutson's Opinion Controlling Weight**

Plaintiff next contends that (1) the ALJ erred in giving little weight to Dr. Hutson's opinion that Plaintiff could not work, merely because there was a two-year gap in her treatment with him, and (2) the ALJ erroneously believed that Dr. Hutson's opinion was based only on Plaintiff's subjective complaints. (Doc. 15 at 22-26). Plaintiff argues that, at the least, the ALJ should have re-contacted Dr. Hutson if the ALJ could not ascertain the basis for his opinion. *Id.* at 27-28.

Defendant responds that the ALJ was entitled to give Dr. Hutson's opinion little weight because his opinion that Plaintiff was disabled was conclusory, and that decision is reserved for the Commissioner. (Doc. 16 at 9). In reply, Plaintiff maintains that Dr. Hutson's opinion that she is disabled was not impermissibly conclusory because it contained supporting information. (Doc. 17 at 9, citing Tr. 294). She also argues in the alternative, that because the ALJ did not reject Dr. Huston's opinion as conclusory, this Court cannot uphold the ALJ's decision on that basis. (Doc. 17 at 9).

When a treating physician's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). However, a treating physician's opinion may be given little or no weight

13

"where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 455-56. "[I]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.* at 453.

In this case, the ALJ correctly noted that there was a two-year gap in Dr. Hutson's treatment of Plaintiff. However, it is apparent from reviewing Dr. Hutson's records and the workforce services sheet he filled out that he based his disability decision on Plaintiff's ultrasound, CT scan, and blood tests, in addition to Plaintiff's self-report of "significant fatigue." (Tr. 294, 330). Even so, Dr. Hutson's opinion does not speak to the extent of Plaintiff's work-related limitations, and it is merely a conclusory statement that she is disabled, which is a decision reserved to the Commissioner. *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994) (the "ALJ has the sole responsibility for determining the claimant's disability status."). However, the fact that Dr. Hutson failed to indicate what Plaintiff was capable of doing in spite of her impairments does not automatically render his report incomplete such that the ALJ was required to re-contact him. The ALJ's need to re-contact a medical source arises only when the available evidence is inadequate to determine if there is a disability. 20 C.F.R. §§ 404.1512(e), 416.912(e).

In this case, the ALJ considered over 200 pages of medical evidence before rendering her decision, three consulting physicians concluded that Plaintiff's impairments do not prevent her

14

from working, and a vocational expert testified to the same effect. (Tr. 48-50, 278-79, 281). It is difficult to characterize such an extensive record as "inadequate." Further, there is no basis for the Court to conclude that the ALJ's re-contacting Dr. Hutson would have overcome the substantial medical evidence in the record and altered the ALJ's decision. Because the Court cannot conclude, based on review of the record of this case, that Plaintiff was prejudiced by the ALJ's decision not to re-contact Dr. Hutson, there is no basis for reversal. *Kane*, 731 F.2d at 1219-20.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* (Doc. 15) should be **DENIED**. Nevertheless, because Defendant did not cross-move for summary judgment, as this Court's scheduling order specifically directed (Doc. 14 at 3) and the local rules mandate (*see* L.R. 9.1(b), requiring that "all parties" file motions for summary judgment in this type case unless exempted by the presiding judge), this case should remain pending. **Defendant is ordered to file a motion for summary judgment on or before August 8, 2012, so that in the event the District Judge accepts and adopts this recommendation, judgment can be granted in Defendant's favor and this case can be closed.**

**SIGNED** on August 1, 2012.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

15

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                      RENÉE HARRIS TOLIVER
                                                      UNITED STATES MAGISTRATE JUDGE